**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| AMBER McKINLEY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Case No. 2:17-cv-02048-JPM-tmp |
| GENGHIS GRILL FRANCHISE CONCEPTS, LP, D/B/A GENGHIS GRILL, | ) | Judge: Jon P. McCalla<br>Magistrate: Tu M. Pham |
| CHALAK RESTAURANTS OF GERMANTOWN, LLC, | ) | |
| CMG MANAGEMENT SOLUTIONS, LLC, | ) | |
| AL BHAKTA, | ) | |
| CHET BHAKTA, | ) | |
| RON PARIKH, | ) | |
| MANISH PATEL, | ) | |
| DR. SANJAY PATEL, | ) | |
| PUSHPAK PATEL, and | ) | |
| DOE DEFENDANTS 1-10, | ) | |
| *Defendants*. | ) | |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Amber McKinley ("Plaintiff McKinley"), by her undersigned attorneys, on her own behalf and on behalf of all others similarly situated, upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, brings this putative collective action against all named Defendants, Genghis Grill Franchise Concepts, LP, d/b/a Genghis Grill, Chalak Restaurants of Germantown, LLC, CMG Management Solutions, LLC, Al Bhakta, Chet Bhakta, Ron Parikh, Manish Patel, Dr. Sanjay Patel, Pushpak Patel, and Doe Defendants 1-10, (hereinafter collectively referred to as "Defendants") as Defendants form a single enterprise that acts as a unified

entity for the purpose of owning, operating, managing, and/or controlling Genghis Grill restaurants, and allege as follows:

## PRELIMINARY STATEMENT

1. This is a collective action for unpaid minimum and overtime wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 216(b).

2. The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours."

3. Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks.

4. The FLSA's definition of the term "wage," in turn, recognizes that under certain circumstances, an employer of tipped employees may credit a portion of its employees' tips against its minimum wage obligation, a practice commonly referred to as taking a "tip credit."

5. However, an employer may not take a "tip credit" when 1) employees are required to contribute to a tip pool that is distributed to other employees who do not regularly and customarily engaged in tipped work; 2) employees are required to perform job tasks unrelated to their tipped occupation; and/or 3) employees are required to spend a substantial amount of their time (20% or more) performing non-tipped job tasks that are related to their tipped occupation.

6. The FLSA further protects employees from "off-the-clock" work, *i.e.,* instances where an employer receives work from its employees without paying their employees' wages for the work performed and where such "off-the-clock" work reduces the employees' pay to a rate that is below that of the applicable minimum wage.

7. As alleged and described more fully below, Defendants violated the FLSA by requiring Plaintiff and others similarly situated to: 1) contribute to an unlawful tip pool, 2) work "off-the-clock" for no pay which reduced their weekly pay below that of the applicable minimum wage; 3) perform non-tipped job tasks that were unrelated to their tipped occupation while only being paid the tipped minimum wage; and 4) perform non-tipped job tasks that were related to their tipped occupation for a substantial amount of time (20% or more) while only being paid the tipped minimum wage.

## JURISDICTION AND VENUE

8. This Court has federal-question subject-matter jurisdiction pursuant to 29 U.S.C. §216(b) and 28 U.S.C. § 1331.

9. This Court has personal jurisdiction over all Defendants because Defendants act as a single enterprise and regularly and systematically conduct business in this District.

10. Upon information and belief, the various Defendants are only mere departments of Defendants, and are under the complete control of some other Defendants.

11. Defendants exist as a group of interrelated corporate entities whose business is owning, operating, managing, and/or controlling Genghis Grill restaurants.

12. As the true corporate form of Defendants is a single enterprise, with more than $500,000 in annual revenue, which regularly and systematically conducts business within this state, Defendants are properly haled before this Court.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants transact business within this District and some of the actions giving rise to Plaintiff's injuries took place in this District.

14. Venue is proper in this Western Division of the United States District Court for the Western District of Tennessee pursuant to LR 3.3(a).

## THE PARTIES

15. Plaintiff Amber McKinley is an individual citizen of the State of Tennessee. Plaintiff McKinley resides in Memphis, Tennessee.

16. Plaintiff McKinley was employed by Defendants as a hostess and server at the Genghis Grill restaurant located at 5849 US Hwy 72, Suite 117, Memphis, Tennessee 38119 ("Genghis Grill – TN07" or "Chalak Germantown"), from on or about January 18, 2016 through on or about April 11, 2016.

17. Plaintiff McKinley is familiar with the policies and practices at the Genghis Grill – TN07 location.

18. Plaintiff McKinley is a covered employee within the meaning of the FLSA.

19. Plaintiff McKinley worked as a non-exempt employee of Defendants.

20. Defendant Genghis Grill Franchise Concepts, LP is a Texas limited partnership with a principal place of business at 18900 Dallas Parkway, Suite 125, Dallas, Texas 75287. Defendant Genghis Grill Franchise Concepts, LP does business as Genghis Grill. Defendant Genghis Grill Franchise Concepts, LP may be served through its registered agent, Chetan Bhakta, at 18900 Dallas Parkway, Suite 125, Dallas, Texas 75287.

21. Chalak Restaurants Germantown LLC (Chalak Germantown) is a member-managed Tennessee limited liability company with three LLC Officers: Chet (Chetan) Bhakta, Al (Akash) Bhakta, and Ronak Parikh.

22. CMG Management Solutions, LLC ("CMG Management") is a Delaware limited liability company with a registered office at 18900 Dallas Parkway, #125, Dallas Texas 75287, and may be served through its registered agent Pushpak Patel.

23. CMG Management provides shared human resource services to Chalak Germantown, as well as some other Genghis Grill branded locations.

24. Defendant Al (Akash) Bhakta is an LLC Officer of Chalak Germantown.

25. Defendant Chet (Chetan) Bhakta is an LLC Officer of Chalak Germantown.

26. Defendant Ron Parikh is an LLC Officer of Chalak Germantown.

27. Defendant Manish Patel is a managing director, partner, and Chairman of the Board of Directors at Chalak Mitra Group of Companies. http://www.manishpatel.co/about/ (last visited June 13, 2017).

28. Defendant Dr. Sanjay Patel is a managing director and partner at Chalak Mitra Group of Companies. http://www.sanjay-patel.com /about/ (last visited June 13, 2017).

29. Defendant Pushpak Patel is a managing partner at Chalak Mitra Group of Companies. http://www.pushpakpatel.com /about/ (last visited June 13, 2017).

30. Doe Defendants 1-10 may include other related entities discovered as discovery in this litigation progresses.

31. At all relevant times, Plaintiff was an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 201, *et seq*.

32. The provisions set forth in the FLSA, 29 U.S.C. § 201, *et seq*., apply to all Defendants.

33. At all relevant times, Defendants, or one or more of them, were and continue to qualify as "joint-employers" as defined by the FLSA, 29 U.S.C. § 201, *et seq*.

34. Defendants individually and/or through an enterprise or agent directed and exercised control over Plaintiff's work and wages at all times relevant to this action.

35. Plaintiff, in her work for Defendants, was employed by an enterprise engaged in commerce that had, upon information and belief, annual gross sales in excess of $500,000.

## FACTUAL ALLEGATIONS

### THE OVERARCHING MANAGEMENT OF GENGHIS GRILL BRANDED RESTAURANTS

36. Defendant Genghis Grill Franchise Concepts, LP is, upon information and belief, the franchisor of all franchised Genghis Grill branded restaurants.

37. Defendant Genghis Grill Franchise Concepts, LP enters into franchise agreements that grant others the right and license to operate Genghis Grill branded restaurants.

38. Defendant Genghis Grill Franchise Concepts, LP maintains control over each franchised Genghis Grill branded restaurant.

39. Genghis Grill related limited liability companies (LLCs) in Tennessee use multiple naming variations – including Genghis Grill – TN 05, Genghis Grill – TN07, Genghis Grill – TN08 – all of which have a main office at Genghis Grill headquarters – 18900 Dallas Parkway, Suite 125, Dallas, Texas 75287. See, Exs. A and B.

40. Defendant Genghis Grill Franchise Concepts, LP enters into Mutual Arbitration Agreements with each Genghis Grill Franchise Concepts, LP employee, irrespective of what location or subsidiary the employee will work for.

41. Defendant Genghis Grill Franchise Concepts, LP operates the website www.genghisgrill.com.

42. The "Contact Us" page of www.genghisgrill.com provides:




Available at http://www.genghisgrill.com/contact-us/ (last visited December 27, 2017).

43. Defendant Genghis Grill Franchise Concepts, LP has employees.

44. Some of Defendant Genghis Grill Franchise Concepts, LP employees have the title Operating Partner.

45. Some of Defendant Genghis Grill Franchise Concepts, LP employees have the title Director of Operations.

46. Some of Defendant Genghis Grill Franchise Concepts, LP employees have the title General Manager.

47. Some of Genghis Grill Franchise Concepts, LP's Operating Partners and Directors of Operations visit, observe and/or oversee multiple Genghis Grill branded restaurants.

48. According to the admissions of Defendants made through the Mutual Arbitration Agreement proffered by the Defendants in this matter, Defendant Genghis Grill Franchise Concepts, LP offered employment to Plaintiff McKinley, and, "[a]s a condition of employment with Genghis Grill Franchise Concepts, LP ('Genghis Grill'), the undersigned employee ('Employee') and Genghis

Grill [Franchise Concepts, LP] voluntarily and knowingly enter into this [agreement]." ECF No. 42-1.

49. Defendant Genghis Grill Franchise Concepts, LP enters into Mutual Arbitration Agreements with all employees of Genghis Grill branded restaurants.

50. Defendant Genghis Grill Franchise Concepts, LP has employees that supervise or monitor multiple Genghis Grill branded restaurants.

51. Defendant Genghis Grill Franchise Concepts, LP was employer to Plaintiff.

52. Defendant Genghis Grill Franchise Concepts, LP has employees that help operate franchised Genghis Grill branded restaurants.

53. Defendant Genghis Grill Franchise Concepts, LP promotes its involvement as a selling point for new franchisees.

54. In its "Franchising FAQs," Genghis Grill Franchise Concepts, LP states "Our start-up support includes site review, construction assistance and access to architectural and design consultation. We offer personalized and comprehensive classroom and on-the-job training, on-site grand opening training and assistance, continuing marketing guidance, our exclusive supplier and purchasing programs and **ongoing restaurant-level supervision, feedback and support.**" Available at http://www.genghisgrill.com/franchising/franchising-faqs/ (last visited December 27, 2017) (emphasis added).

55. Additionally, Defendant Genghis Grill Franchise Concepts, LP's "staff brings a wealth of experience from a broad cross section of the franchised food service industry and we can help you find solutions to any challenges you may face."

> The advantages of owning a Genghis Grill franchise are as numerous as the combinations available in our restaurants. We're with you through every step of the process, from site selection and design to training and setting up your Grand Opening. Our staff brings a wealth of experience from a broad cross section of the franchised food service industry and we can help you find solutions to any challenges you may face. With these ingredients, building your own franchise will be as easy as building your own bowl.

available at http://www.genghisgrill.com/franchising/ (last visited December 27, 2017).

56. Defendant Genghis Grill Franchise Concepts, LP recruits new employees for Genghis Grill branded restaurants at www.genghisgrill.com/careers (last visited December 27, 2017).

57. Defendant Genghis Grill Franchise Concepts, LP provides an Application for Employment at http://www.genghisgrill.com/wp-content/uploads/APPLICATION-FOR-EMPLOYMENT-GG.pdf (last visited December 27, 2017).

58. Job applicants apply for employment with Genghis Grill Franchise Concepts, LP and other related entities.

59. As set forth in the Application for Employment "Applicant is completing the application for Genghis Grill Franchise Concepts and its affiliates, collectively referred to as the "Company". http://www.genghisgrill.com/wp-content/uploads/APPLICATION-FOR-EMPLOYMENT-GG.pdf (last visited December 27, 2017).

60. Defendant Genghis Grill Franchise Concepts, LP states "In fact, the success stories you see below are of people just like you. Some of them even started out working in our individual restaurants before working their way up." www.genghisgrill.com/careers (last visited Sept. 28, 2017).

61. Defendant Genghis Grill Franchise Concepts, LP has the right to use and license the use of a system (the "System") for the establishment and operation of full service Mongolian barbecue restaurants featuring "build-your-own-bowls" of stir-fry cuisine, signature alcoholic beverages and desserts and related items ("Genghis Grill Restaurant" or "Restaurant").

62. The distinguishing characteristics of the System include, without limitation, distinctive exterior and interior design, décor, and color scheme; cooking utensils, grills and other furnishings; special recipes and menu items; uniform standards, specifications, policies and procedures for operations; quality and uniformity of the products and services offered; procedures for inventory, management and financial control; training and assistance; and advertising and promotional programs, all of which may be changed, improved, and further developed by Genghis Grill Franchise Concepts, LP from time to time.

63. In each Franchise Agreement, Defendant Genghis Grill Franchise Concepts, LP obtains an acknowledgement that the franchisee "acknowledges the importance of operating the Genghis Grill Restaurant in conformity with Franchisor's [Genghis Grill Franchise Concepts, LP] high standards of quality and service."

64. Additionally, each franchisee must agree "Franchisee wishes to obtain the right to use the System ... as well as to receive the training and other assistance provided by Franchisor [Genghis Grill Franchise Concepts, LP]."

65. Defendant Genghis Grill Franchise Concepts, LP provides training for management level employees for Genghis Grill branded restaurants.

66. This training is provided according to Manuals maintained by Defendant Genghis Grill Franchise Concepts, LP.

67. Further, Defendant Genghis Grill Franchise Concepts, LP has an electronic personnel tracking system.

68. This system allows for employees to be assigned a status of "eligible for rehire" or "not eligible for rehire."

69. Thus, an employee can be prevented from re-hire company wide.

70. Thus, Genghis Grill Franchise Concepts, LP has, and upon information and belief enforces, companywide control of hiring of employees, above the individual franchisee level.

71. Other shared human resources services are provided by CMG Management Solutions, LLC.

72. CMG Management Solutions, LLC provides shared human resources services to seventy-six (76) Genghis Grill branded restaurants.

73. CMG Management Solutions, LLC maintains records for approximately 7,500 current and former employees of Genghis Grill branded restaurants, according to the estimate of Tammy Lucero.

74. CMG Management Solutions, LLC as part of its shared human resources services provides training to Genghis Grill branded restaurants.

**THE "SINGLE LLC" SCHEME**

75. Defendants attempt to assert that each Genghis Grill branded restaurant functions as its own entity.

76. Defendants attempt to use a convoluted corporate hierarchy as a shield against companywide illegal policies and practices.

77. Defendants seek to use a legal fiction to avoid liability for their enterprise-wide illegal conduct.

78. While discovery is ongoing, Plaintiff has already begun to unravel Defendants' "Single LLC" scheme.

79. Upon information and belief, all Genghis Grill franchisees must sign a franchise agreement with Genghis Grill Franchise Concepts, LP.

80. Genghis Grill Franchise Concepts, LP executes many, if not all of these agreements through Chalak Franchising, LLC, through Defendant Al Bhakta.

81. Even more interesting, is the ownership and management structure of Genghis Grill franchises.

82. For all Tennessee Genghis Grill locations, Defendants Al (Akash) Bhakta, Chet (Chetan) Bhakta, and Ron Parikh serve as the LLC's three officers.

83. According to documents filed with the Tennessee Secretary of State, the LLC Officers of Tennessee Genghis Grills are:

| Tennessee LLC Name | LLC Officers | Management Structure Since |
|---|---|---|
| Chalak Restaurants Germantown LLC | Akash Bhatka<br>Chetan Bhakta<br>Ron Parikh | 2/26/2013 |
| Chalak Restaurants Cordova LLC | Akash Bhatka<br>Chetan Bhakta<br>Ron Parikh | 2/26/2013 |
| Chalak Restaurants Murfreesboro LLC | Akash Bhatka<br>Chetan Bhakta<br>Ron Parikh | 2/26/2013 |
| Chalak Restaurants Knoxville LLC | Akash Bhatka<br>Chetan Bhakta<br>Ron Parikh | 2/26/2013 |
| Chalak Restaurants Jackson LLC | Akash Bhatka<br>Chetan Bhakta<br>Ron Parikh | 2/26/2013 |
| Chalak Restaurants Franklin LLC | Akash Bhatka<br>Chetan Bhakta<br>Ron Parikh | 12/19/2013 |

| | | |
|---|---|---|
| Chalak Restaurants Hendersonville LLC | Akash Bhatka<br>Chetan Bhakta<br>Ron Parikh | 12/19/2013 |

Group Ex. D, Tennessee Secretary of State Documents.

84. For Chalak Restaurants Hendersonville LLC and Chalak Restaurants Franklin LLC, Defendant Al (Akash) Bhakta filed a "Consent to Use Name" form where he identified himself as "Akash Bhakta, Manager of Chalak Restaurants Franklin, LLC." *Id*.

85. Defendant Al Bhakta is also the manager of other Chalak LLCs in other states, including states where declarations have been provided that aver the same illegal policies and practices as those imposed upon Plaintiff McKinley.

86. In North Carolina, "All LLCs are managed by their managers pursuant to N.C.G.S. 57D-3-20."

87. This statute provides "The management of an LLC and its business is vested in the managers. Each manager has equal rights to participate in the management of the LLC and its business...." N.C. Gen. Stat. § 57D-3-20(a) and (b).

88. North Carolina Genghis Grill entities in which Defendant Al Bhakta serves as "Manager" include Chalak-Carroll Ballantyne, LLC, Chalak-Carroll Matthews, LLC, and Chalak Restaurants Winston-Salem, LLC. Group Ex. E.

89. Other states where Defendants Al (Akash) Bhakta or Chet (Chetan) Bhakta have served as a member, manager, officer, or organizer of Genghis Grill branded restaurants' "individual" LLCs include, at least:

| **State** | **Entity Name** | **Member / Manager** |
|---|---|---|
| Arkansas | Chalak-M&M AR1, LLC | Chetan Bhakta, Manager |
| Arkansas | Chalak-M&M AR2, LLC | Chetan Bhakta, Manager |
| Arkansas | Chalak-M&M OK1, LLC | Chetan Bhakta, Manager |
| Arkansas | Chalak-M&M OK2, LLC | Chetan Bhakta, Manager |

| | | |
|---|---|---|
| Arkansas | Chalak-M&M OK3, LLC | Chetan Bhakta, Manager |
| Arkansas | Chalak-M&M OK4, LLC | Chetan Bhakta, Manager |
| Colorado | Chalak Restaurants Denver West, LLC | Akash Bhakta, Organizer |
| Colorado | Chalak Restaurants Park Meadows, LLC | Al Bhakta |
| Colorado | Chalak Restaurants Thornton, LLC | Akash Bhakta, Organizer<br><br>Akash Bhakta, filed for Dissolution of LLC |
| Florida | Chalak-Miami 1, LLC | Al Bhakta, Manager |
| Florida | Chalak-Miami 2, LLC | Al Bhakta, Manager |
| Georgia | Chalak-Carroll Alpharetta, LLC | Chetan Bhakta, Manger |
| Georgia | Chalak-Carroll Buckhead, LLC | Chetan Bhakta, Manager |
| Georgia | Chalak-Carroll Buford, LLC | Chetan Bhakta, Manager |
| Georgia | Chalak-Carroll Perimeter, LLC | Chetan Bhakta, Manager |
| Kansas | Chalak Restaurants Overland Park, LLC | Chetan Bhakta, Member |
| Kansas | Chalak Restaurants Wichita East, LLC | Chetan Bhakta, Member |
| Kansas | Chalak Restaurants Wichita West, LLC | Chetan Bhakta, Member |
| Maryland | Chalak-Politano Waldorf, LLC | Akash Bhatka, Organizer and Authorized Person |
| Maryland | Chalak-Politano Waugh Chapel, LLC | Akash Bhatka, Organizer and Authorized Person |
| Nevada | Chalak-Mandigo Sunset LLC | Akash Bhakta, Manger |
| New Mexico | Chalak Restaurants Las Cruces, LLC | Akash Bhakta, Organizer |
| North Carolina | Chalak-Carroll Ballantyne, LLC | Akash Bhakta, Manager |
| North Carolina | Chalak-Carroll Matthews, LLC | Akash Bhakta, Manager |
| North Carolina | Chalak Restaurants Winston-Salem, LLC | Akash Bhakta, Manager |
| South Carolina | Chalak-Carroll Greenville, LLC | Al Bhakta, Manager |

Group Exs. E and F.

90. Additionally, many of the "individual" LLCs share the same office 18900 Dallas Parkway, Suite 125, Dallas, Texas 75287.

91. The structure of this enterprise is a sham created in an attempt to avoid liability for enterprise-wide illegal policies and practices, including the statutory duty to pay adequate wages to employees.

92. Upon information and belief, each single limited liability company was grossly undercapitalized.

**DEFENDANTS' ENTERPRISE-WIDE POLICIES AND PRACTICES**

93. Plaintiff was hired by Genghis Grill Franchise Concepts, LP and Chalak Germantown as a tipped employee, as defined by the FLSA, 29 U.S.C. § 203(t).

94. Despite this, Defendants did not pay Plaintiff the proper minimum wages for all of the time that she was suffered or permitted to work each workweek.

95. Plaintiff McKinley worked for Defendants between on or about January 2016 through on or about April 2016.

96. During Plaintiff McKinley's employment, she worked at the Genghis Grill restaurant in Memphis, Tennessee located at 5849 US Hwy 72, Suite 117, Memphis, TN 38119.

97. Upon information and belief, and based on records found through the Shelby County Assessor of Property's website, this address may also commonly be referred to as "5849 Poplar Ave."

98. Plaintiff McKinley was subject to and observed the policies and practices at this location.

99. Additionally, and as more fully described below, the same practices in place at the Genghis Grill – TN07 location were the same practices alleged about the Tulsa and Bixby Oklahoma Genghis Grill locations in another FLSA lawsuit filed against Genghis Grill, and, upon information and belief, are the same policies and practices in place at all Genghis Grill locations.

100. Additionally, and as more fully described below, the same practices in place at the Genghis Grill – TN07 location were the same practices alleged about the Genghis Grill locations in North Carolina.

101. In similar FLSA actions, the Chalak Group, Inc. has retained counsel and paid (or at least promised to pay, although Chalak Group, Inc.'s former counsel has filed suit alleging nearly $1,000,000 in unpaid legal bills) for legal bills to defend different limited liability company entities.

102. As Defendants utilize company-wide pay policies and practices, the same pay policies and practices were, upon information and belief, in effect at all Genghis Grill locations, including the Genghis Grill locations in Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Kansas, Maryland, Minnesota, Mississippi, Nevada, New Mexico, North Carolina, Oklahoma, South Carolina Tennessee, Texas, and Virginia.

103. Consistent with their enterprise-wide policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**DEFENDANTS' TIP POOL VIOLATIONS**

104. Defendants required Plaintiff to contribute to a tip pool.

105. Specifically, Defendants mandated that 4 percent of the tips earned by Plaintiff were to be contributed to the tip pool and paid to other Genghis Grill employees.

106. The tip pool which Plaintiff contributed to, as required by Defendants, included employees who do not customarily and regularly receive tips, despite the scope of the definition of "tipped employee" from 29 U.S.C. § 203(t), and in willful violation of the FLSA, 29 U.S.C. § 206(a).

107. As a result of Defendants' violation of 29 U.S.C. § 206(a), Defendants are disallowed from taking a tip credit from its tipped employees' hourly wages.

108. Accordingly, Plaintiff should have been paid the full hourly minimum wage with no tip-credit reduction, $7.25 per hour.

109. However, as alleged above, Defendants regularly and consistently paid Plaintiff at the tip-credit minimum wage, only $2.13 per hour.

110. Plaintiff is therefore entitled to the difference between the full minimum hourly wage rate and the wage rate paid for all hours Plaintiff worked – $5.12 per hour for Plaintiff – and, additionally, the amount of all tips contributed to the illegal tip pool.

## DEFENDANTS TIP-CREDIT VIOLATIONS

111. Plaintiff was also paid the tipped wage rate indicated above for time spent working before the location was open and after the location was closed, performing tasks that were not related to earning tips, at times when Plaintiff could not earn tips.

112. Defendants engaged in the regular practice of requiring Plaintiff to perform a substantial amount of non-tipped labor.

113. Plaintiff was required to engage in non-tipped labor unrelated to her tipped occupation over the course of her regular workweeks.

114. Further, Plaintiff was required to engage in non-tipped labor related to her tipped occupation.

115. To the extent such non-tipped labor was related to Plaintiff's tipped occupation, it exceeded 20% of Plaintiff's regular workweeks.

116. Examples of non-tipped labor unrelated to Plaintiff's tipped occupation that Plaintiff performed during her regular workweeks include, but are not limited to: preparatory and workplace maintenance tasks such as taking out trash, scrubbing walls, sweeping floors, cleaning booths, sweeping, mopping, washing dishes, breaking down and cleaning the expeditor line, and restocking restrooms.

117. Non-tipped labor related to Plaintiff's tipped occupation included, but is not limited to: preparatory and workplace maintenance tasks such as brewing tea, brewing coffee, rolling silverware, cleaning soft drink dispensers, wiping down tables, setting tables, busing tables, cutting and stocking fruit, stocking ice, taking out trash, scrubbing walls, sweeping floors, restocking to-go supplies, cleaning booths, cleaning ramekins, sweeping, mopping, restocking all stations, washing dishes, and breaking down and cleaning the expeditor line.

118. As a result of Defendants' willful requirement that Plaintiff perform non-tipped labor unrelated to her tipped occupation over the course of her regular workweeks and a substantial amount of non-tipped labor related to her tipped occupations in excess of 20% of her regular workweeks, Defendants effectively paid Plaintiff less than the applicable overall minimum wage for such work.

119. Although Plaintiff should have been paid the full minimum wage, as stated above, Defendants paid Plaintiff an hourly rate that fell below the minimum wage to which Plaintiff was entitled, in violation of the FLSA.

120. Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff the full applicable minimum wage, without applying the tip credit, for time spent performing labor in such a non-tipped occupation, would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff's employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

121. Upon information and belief, Plaintiff McKinley was paid less than minimum wage on a weekly basis, for multiple workweeks.

122. Plaintiff McKinley believes and avers that Defendants owe her unpaid wages for each and every workweek during which she was employed by Defendants. Furthermore, as Defendants have failed to keep complete and accurate time records, Plaintiff McKinley may establish the hours worked by her testimony and the burden of overcoming such testimony shifts to Defendants.

**DEFENDANTS' STRAIGHT TIME MINIMUM WAGE VIOLATIONS**

123. Defendants also regularly and consistently required Plaintiff to "clock out" yet continue to perform non-tip-earning duties and/or remain on the premises in order to avoid incurring excessive and/or overtime labor costs, in willful violation of the FLSA.

124. As a result, Defendants failed to compensate Plaintiff at the applicable minimum wage rate for all hours worked, in violation of 29 U.S.C. § 206(a).

125. From approximately January 2016 to April 2016, Plaintiff was regularly and consistently required to perform "off-the-clock" work approximately one half hours (.5 hours) to one and one half hours (1.5) per shift while "off-the–clock."

126. Defendants engaged in the regular practice of willfully failing to pay Plaintiff for all time that Plaintiff worked while "off-the-clock."

127. Defendants engaged in the regular practice of failing to accurately, if at all, record the time during which Defendants suffered or permitted Plaintiff to work.

128. As such, Plaintiff's time records, if in existence, understate the duration of time each workweek that Defendants suffered or permitted Plaintiff to work.

129. Defendants utilized an online/electronic system for tracking Plaintiff's "clock-in" and "clock-out" data, sometimes referred to as "time detail records."

130. Plaintiff has been provided, though discovery, some payroll records.

131. After training, Plaintiff was not allowed to track different work codes, other than Server/Bowlrunner or Host, even though the timekeeping system had the ability to do so.

132. Defendants' timekeeping system could have tracked tipped vs. untipped work, but Defendants did not use this feature, and prevented Plaintiff from doing so.

133. Defendants maintain possession and control of this data.

134. This information must be maintained by Defendants and will be discoverable in this matter.

135. Due to the allegations set forth above, Defendants failed to furnish Plaintiff with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

## SUMMARY OF DEFENDANTS' ALLEGED VIOLATIONS

136. Plaintiff alleges four different violations of the FLSA by Defendants.

137. Plaintiff believes and avers that Defendants owe her unpaid wages for each and every workweek during which she was employed by Defendants because Defendants violated the FLSA by requiring Plaintiff and others similarly situated to: 1) contribute to an unlawful tip pool, 2) work "off-the-clock" for no pay which reduced their weekly pay below that of the applicable minimum wage; 3) perform non-tipped job tasks that were unrelated to their tipped occupation while only being paid the tipped minimum wage; and 4) perform non-tipped job tasks that were related to their tipped occupation for a substantial amount of time (20% or more) while only being paid the tipped minimum wage.

138. Upon information and belief, Plaintiff was subject to the same company-wide policies and practices and same FLSA violations as other Genghis Grill locations across the country, even though it appears Genghis Grill locations form an LLC for each location to avoid liability for company-wide policies and practices.

139. Defendants co-mingle control and act through various individuals and entities – which are sometimes completely fabricated fictitious names for other entities, all of which act concertedly for the betterment of the Genghis Grill enterprise. As such, Defendants are jointly liable for their unlawful acts.

140. Additionally, other Genghis Grill restaurants operate using the same company-wide policies and practices, as similar lawsuits have been filed in Arizona, Georgia, Texas, and Arkansas.[1]

---

[1] *Collins v. Chalak-MMT PV LLC et al*, Case No. 2:15-cv-02158 (D. Ariz.); *Elezovic et al v. Chalak-Carroll Buford, LLC*, Case No. 1:16-cv-00532 (N.D. Ga.); *Arnold v. Genghis Grill, et al.*; Case No. 4:16-cv-00328 (N.D. Okla.); *Fulton v. Chalak Restaurants, Inc. et al*, Case No. 5:09-cv-00673 (W.D. Tex.); and *Israsena et al v. Chalak M&M AR1 LLC et al*, Case No. 4:15-cv-00038 (E.D. Ark.).

141. These allegations further show the overarching, nationwide minimum wage policies and practices that are endemic to the entire Genghis Grill enterprise and have harmed all similarly situated employees of Genghis Grill.

## COLLECTIVE ACTION ALLEGATIONS

142. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) on behalf of herself and two FLSA Collective Classes, encompassing persons similarly situated to Plaintiff and seeking relief, and defined as:

> **The FLSA Tip-Credit Collective Class**
> All current and former workers employed by Defendants at a Genghis Grill branded restaurant who were paid at a sub-minimum wage rate or had to contribute to a tip pool within three years preceding the date of conditional certification of this action through final judgment in this matter, and who elect to opt into this action.
>
> **The FLSA Minimum Wage Collective Class**
> All current and former non-exempt hourly paid workers employed by Defendants at a Genghis Grill branded restaurant who were required to work "off–the-clock" and therefore were not properly paid minimum wage for all hours worked in a workweek within three years preceding the date of conditional certification of this action through final judgment in this matter, and who elect to opt into this action.

The FLSA Tip-Credit Collective Class and The FLSA Minimum Wage Collective Class are collectively referred to herein as the "Classes,"

143. Plaintiff reserves the right to add, amend, modify, or further define the Classes and/or to move for certification of a class or classes defined differently than set forth above depending on the facts or law as discovered in this action.

144. Plaintiff asserts claims against Defendants individually and on behalf of all Class members for violations of the law as set forth below.

---

*Swaney, et al. v. M&M Mongolian Grill, LLC d/b/a Genghis Grill*, Case No. 4:14-cv-00110 (E.D. Ark.). Complaints provided as Group Ex. C.

145. The members of the Classes are ascertainable from objective criteria.

146. If necessary to preserve the case as a collective action, the Court itself can redefine the Classes, create additional subclasses, or both.

147. Additionally, Collective Class treatment will permit large numbers of similarly-situated non-exempt hourly and tipped workers to prosecute their respective claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

148. Further, Plaintiff and all others similarly situated have substantive right to bargain and proceed together as members of a collective legal process, guaranteed by the National Labor Relations Act, 29 U.S.C. § 157 and 158(a)(1) ("NLRA"), which cannot be waived. Any contract or agreement that attempts to do so is illegal and unenforceable under binding Sixth Circuit precedent. *NLRB v. Alt. Entm't, Inc.*, No. 16-1385, 2017 U.S. App. LEXIS 9272 (6th Cir. May 26, 2017).

149. By prosecuting this case as a collective class action, collective class members, who may be current employees of Defendants', may receive just compensation for the work performed for Defendants without fear of retaliation for seeking just compensation individually.

150. Further, giving notice to all Genghis Grill employees, even if eventually compelled to arbitrate their claims, servers the important social purpose of keeping employees informed of their rights.

151. Moreover, notice may be provided to members of the proposed class by including notice with each potential class members paycheck stub, first-class mail to addresses maintained for each employee by Defendants, and through the alternative means, including electronic mail (email), social network posting (*i.e.*, Facebook posts), and job-site postings.

152. Finally, the collective and class action is an appropriate method for the fair and efficient adjudication of this controversy given the following:

a. all putative class and subclass members are "similarly situated," in that, at least, Defendants utilized a company-wide compensation policy and practice whereby tipped workers were paid the tipped minimum wage for all hours worked regardless of the duties performed or the ability to earn tips, tipped-workers have to contribute to an illegal tip pool, and workers are forced to work "off-the-clock" and are not paid, resulting in Defendants failure to pay minimum wage for all hours worked in a workweek. Plaintiff McKinley was subject to and saw the same policy and practice complained of at other Genghis Grill locations, even though there were different managers at each store;

b. common questions of fact and law predominate over any individual questions that may arise, such that the class or collective action mechanism is superior to other available means for the fair and efficient adjudication of this dispute;

c. there will be enormous economies to the Court and the parties in litigating the common issues in a class or collective action instead of individual claims;

d. class or collective action treatment is required for optimal resolution of this matter and for limiting the court-awarded reasonable legal expenses incurred by class or collective action members;

e. if the size of individual class or collective action members' claims are small, their aggregate volume, coupled with the economies of scale in litigating similar claims on a common basis, will enable this case to be litigated as a class or collective action on a cost-effective basis, especially when compared with the cost of individual litigation; and

f. the trial of this case as a class or collective action will be fair and efficient because the questions of law and fact which are common to the Plaintiff, the FLSA Tip-Credit Collective Class and The FLSA Minimum Wage Collective Class predominate over any individual issues that may arise.

## CLAIMS FOR RELIEF

## COUNT I

## ON BEHALF OF THE FLSA TIP-CREDIT COLLECTIVE CLASS
## FAIR LABOR STANDARDS ACT – ILLEGAL TIP POOLING ARRANGEMENT

153. Plaintiff incorporates by reference all allegations in all preceding paragraphs as is fully set forth herein.

154. Defendants required Plaintiff and members of the FLSA Tip-Credit Collective Class to participate in a tip-pooling arrangement wherein Plaintiff and members of the FLSA Tip-Credit Collective Class were required to contribute to a tip pool that included employees who do not customarily and regularly receive tips, despite the scope of the definition of "tipped employee" contained within 29 U.S.C. § 203(m), and in willful violation of the FLSA, 29 U.S.C. 206(a).

155. Plaintiff and members of the FLSA Tip-Credit Collective Class were paid at the tip-credit minimum wage.

156. Each and every workweek Plaintiff and members of the FLSA Tip-Credit Collective Class worked for Defendants, Plaintiff and members of the FLSA Tip-Credit Collective Class were required to distribute a portion of their earned tips to back-of-the-house, non-tipped employees, in violation of 29 U.S.C. § 203(m).

157. As a result of Defendants requirement that Plaintiff and members of the FLSA Tip-Credit Collective Class participate in an illegal tip pooling arrangement, Defendants are disallowed entirely from taking a tip credit from its tipped employees' hourly wages, including Plaintiff and the members of the FLSA Tip-Credit Collective Class.

158. Plaintiff and members of the FLSA Tip-Credit Collective Class are therefore entitled to the difference between the full minimum hourly wage rate and the wage rate paid for all hours

Plaintiff and members of the FLSA Tip-Credit Collective Class worked and, additionally, the amount of all tips Plaintiff and members of the FLSA Tip-Credit Collective Class contributed to the illegal tip pool.

159. Defendants have willfully violated the FLSA by not paying proper wages to Plaintiff and members of the FLSA Tip-Credit Collective Class, and, upon information and belief, continue to willfully violate the FLSA by not paying proper wages to FLSA Tip-Credit Collective Class members.

160. Due to Defendants' companywide illegal wage practices, Plaintiff and members of the FLSA Tip-Credit Collective Class are entitled to recover from Defendants compensation for the difference between the full minimum hourly wage and the tip-credit minimum wage for all hours worked for Defendants, the amount of all tips contributed to the illegal tip pool, and additional equal amount as liquidated damages, interest, and reasonable attorney's fees and costs of this action under 29 U.S.C. § 216(b).

## COUNT II

## ON BEHALF OF THE FLSA MINIMUM WAGE COLLECTIVE CLASS
## FAILURE TO PAY MINIMUM WAGES UNDER THE FAIR LABOR STANDARDS ACT

161. Plaintiff incorporates by reference all allegations in all preceding paragraphs as is fully set forth herein.

162. Defendants regularly and consistently required Plaintiff and members of the FLSA Minimum Wage Collective Class to clock out, yet continue to perform non-tip-earning duties and/or remain on the restaurant premises in order to avoid incurring excessive and/or overtime labor costs.

163. Defendants intentionally failed and/or refused to pay Plaintiff and members of the FLSA Minimum Wage Collective Class minimum wage according to the provisions of the FLSA for

each and every workweek that Plaintiff and members of the FLSA Minimum Wage Collective Class worked for Defendant, for the duration of their employment, in violations of 29 U.S.C. § 206(a).

164. As a result of Defendants' willful failure to compensate Plaintiff and members of the FLSA Minimum Wage Collective Class the applicable minimum wage for all hours worked, Defendants violated the FLSA.

165. As such, full minimum wage is owed to Plaintiff and members of the FLSA Minimum Wage Collective Class for time Plaintiff and members of the FLSA Minimum Wage Collective Class were suffered or permitted to work "off-the-clock."

166. Defendants knew that – or acted with reckless disregard as to whether their failure to pay to Plaintiff and members of the FLSA Minimum Wage Collective Class the full minimum wage for time spent performing non-tipped labor and/or requiring Plaintiff and members of the FLSA Minimum Wage Collective Class to remain on restaurant premises would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff's and other similarly situated FLSA Minimum Wage Collective Class members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

167. Defendants have willfully violated the FLSA by failing to pay Plaintiff and members of the FLSA Minimum Wage Collective Class a wage equal to or greater than minimum wage for time Defendants required Plaintiff and members of the FLSA Minimum Wage Collective Class to perform non-tipped labor and/or remain on the premises while "off-the–clock," and Defendants continue to willfully violate the FLSA by requiring FLSA Minimum Collective Class members to perform non-tipped labor and/or remain on the premises while "off-the-clock."

168. Plaintiff and members of the FLSA Minimum Wage Collective Class are therefore entitled to compensation for the difference between wages paid and the minimum wage at an hourly

rate to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, costs, and reasonable attorney's fees.

## COUNT III

### ON BEHALF OF THE FLSA TIP CREDIT COLLECTIVE CLASS
### FLSA TIP CREDIT VIOLATION – NON-TIPPED LABOR UNRELATED TO WORK

169. Plaintiff incorporates by reference all allegations in all preceding paragraphs as is fully set forth herein.

170. Defendants intentionally failed and/or refused to comply with the FLSA, 29 U.S.C. § 201, *et seq.*, 29 C.F.R. § 531.56(e), and the Department of Labor Field Operations Handbook § 30d00(e) by requiring Plaintiff and members of the FLSA Tip-Credit Collective Class in a given workweek, and during each and every workweek Plaintiff and members of the FLSA Tip-Credit Collective Class were employed by Defendants, to perform non-tipped labor unrelated to their tipped occupation over the house of their regular workweek, while paying Plaintiff and members of the FLSA Tip-Credit Collective Class at the tip-credit rate.

171. Defendants intentionally failed and/or refused to pay Plaintiff and members of the FLSA Tip-Credit Collective Class the full applicable minimum wage according to the provisions of the FLSA for time spent performing non-tipped labor unrelated to the tipped occupation over the course of a given workweek, for each and every workweek that Plaintiff and members of the FLSA Tip-Credit Collective Class were employed by Defendants, in violation of 29 U.S.C. § 206(a).

172. As such, full applicable minimum wage for such time Plaintiff and members of the FLSA Tip-Credit Collective Class performed non-tipped labor unrelated to the tipped occupation over the course of the regular workweek is owed to Plaintiff and members of the FLSA Tip-Credit Collective Class for each and every workweek they were employed by Defendants.

173. Defendants knew that – or acted with reckless disregard as to whether – its failure to pay to Plaintiff and members of the FLSA Tip-Credit Collective Class the full applicable minimum wage, without applying the tip credit, for time spent performing labor in such a non-tipped occupation, would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff's and FLSA Tip-Credit Collective Class members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

174. Plaintiff and members of the FLSA Tip-Credit Collective Class are therefore entitled to compensation for the full minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## COUNT IV

## ON BEHALF OF THE FLSA TIP-CREDIT COLLECTIVE CLASS
## FLSA TIP CREDIT VIOLATION – NON-TIPPED LABOR RELATED TO TIPPED WORK IN EXCESS OF 20% OF WORKTIME

175. Plaintiff incorporates by reference all allegations in all preceding paragraphs as is fully set forth herein.

176. Defendants intentionally failed and/or refused to comply with the FLSA, 29 U.S.C. § 201, *et seq*., 29 C.F.R. § 531.56(e), and the Department of Labor Field Operations Handbook §30d00(e) by requiring Plaintiff and members of the FLSA Tip-Credit Collective Class in a given workweek, and during each and every workweek Plaintiff and members of the FLSA Tip-Credit Collective Class were employed by Defendants, to perform non-tipped labor related to their tipped occupation in excess of twenty percent (20%) of their regular 40-hour workweek, while paying Plaintiff and members of the FLSA Tip-Credit Collective Class at the tip credit rate.

177. Defendants intentionally failed and/or refused to pay Plaintiff and members of the FLSA Tip-Credit Collective Class the full applicable minimum wage according to the provisions of the FLSA for time spent performing non-tipped labor related to the tipped occupation in excess of twenty percent (20%) of a given workweek, for each and every workweek that Plaintiff and members of the FLSA Tip-Credit Collective Class were employed by Defendants, in violation of 29 U.S.C. § 206(a).

178. As such, full applicable minimum wage for such time Plaintiff and members of the FLSA Tip-Credit Collective Class performed non-tipped labor related to the tipped occupation in excess of twenty percent (20%) of the regular workweek is owed to Plaintiff and members of the FLSA Tip-Credit Collective Class for each and every workweek they were employed by Defendants.

179. Defendants knew that – or acted with reckless disregard as to whether – its failure to pay to Plaintiff and members of the FLSA Tip-Credit Collective Class the full applicable minimum wage, without applying the tip credit, for time spent performing labor in such a non-tipped occupation, would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff's and FLSA Tip-Credit Collective Class members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

180. Plaintiff and members of the FLSA Tip-Credit Collective Class are therefore entitled to compensation for the full minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all others similarly situated, pray for relief as follows:

A. an order from the Court certifying the FLSA Tip-Credit Collective Class and the FLSA Minimum Wage Collective Class identified herein as an FLSA collective action;

B. an order from the Court awarding Plaintiff and Collective Class members their unpaid wages in an amount to be proven at trial;

C. an order from the Court awarding Plaintiff and Collective Class members compensatory damages in an amount to be proven at trial;

D. an order from the Court awarding Plaintiff and Collective members liquidated damages in an amount set by applicable law and to be proven at trial;

E. an order from the Court awarding Plaintiff and Collective Class members pre-judgment and post-judgment interest, as well as reasonable attorneys' and expert-witness fees and other costs as may be available under law; and

F. an order from the Court awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all issues so triable.

Dated: January 22, 2018

Respectfully Submitted,

By: */s/ Brandon M. Wise*

Brandon M. Wise – MO Bar #67242
PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@prwlegal.com

Bryce Ashby - #26179
DONATI LAW, PLLC
1545 Union Avenue
Memphis, TN 38104
Ph: 901-278-3111
Email: bryce@donatilaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2018 the foregoing document was filed with the Clerk of the Court using the CM/ECF e-filing system. This system will provide notice and allow access to all parties of record.

*/s/ Brandon M. Wise*